# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CHANIKA MOORE,

        Petitioner,               Case Number: 06-CV-14824

v.                                     HON. JOHN CORBETT O'MEARA

CLARICE STOVALL,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

This is a habeas case under 28 U.S.C. § 2254. Petitioner Chanika Moore (Petitioner) is a state inmate at the Scott Correctional Facility in Plymouth, Michigan, serving a fifteen to thirty year sentence for assault with intent to commit murder. Petitioner filed a *pro se* petition for a writ of habeas corpus claiming that her convictions were unconstitutionally obtained on various grounds. Respondent, through the Attorney General's office, filed a response, arguing that Petitioner's claims lack merit and/or are procedurally defaulted. Because the Court concludes that Petitioner's claims lack merit, the Court denies the petition.

## I. Background

Petitioner's conviction arises from the beating of Lorrie Richbow, outside her brother's house in the City of Detroit. Petitioner was jointly tried with co-defendant Felicia Dyer. The Michigan Court of Appeals summarized the facts supporting Petitioner's conviction as follows:

> Defendants' convictions arise from allegations that, in the early morning of February 8, 2003, defendant Dyer shot the complainant while riding in a car driven by defendant Moore. At approximately 2:30 a.m., the complainant was walking from a friend's house to get into David Carter's car when defendant's car pulled up. According to the complainant, defendant Moore got out of the car,

made a comment, and then defendant Dyer "grabbed [the complainant's] jacket" and asked if it was leather. A fight ensued, and eventually some men intervened.

The complainant got into the passenger side of Carter's car, and Carter quickly drove away. Defendants got into defendant Moore's car, with defendant Moore driving and defendant Dyer in the passenger seat, and followed Carter's vehicle. Carter estimated that the chase lasted five minutes. According to the complainant, defendant Moore attempted to run Carter's car "off the road," and "kept trying to swerve [them] off the road." She also saw defendant Dyer "hanging out" of the window. Carter testified that defendant's car was so close that it almost hit his car and, at one point, he had to swerve onto a sidewalk to avoid being hit. Carter saw defendant Dyer leaning out of the window, and saw her arm extended. Both Carter and the complainant heard a gunshot, and the complainant felt a "nick."

The complainant identified both defendants at lineup. At trial, the complainant testified that she was "positive" that defendant Moore was the driver of the pursuing vehicle, and that defendant Dyer was seated on the passenger side. At trial, Carter identified defendant Moore as the driver and defendant Dyer as the woman he saw leaning out of the passenger side window. Although Carter saw defendant Dyer's arm extended and heard a shot, he did not see a gun. At the lineup, Carter identified defendant Moore as the driver, but originally identified someone other than defendant Dyer as the shooter. Shortly after the lineup was concluded, Carter indicated to a police officer that he chose the wrong person. He then identified defendant Dyer from a photo array of the original lineup. Other witnesses, including the complainant's brother, identified defendants as being involved in a brawl with the complainant, and also indicated that defendants left after Carter and the complainant.

*People v. Moore*, No. 252304 (Mich. Ct. App. March 1, 2005).

## II. Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of assault with intent to commit murder. On September 30, 2003, she was sentenced to fifteen to thirty years imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

   I.   The cumulative effect of the prosecutor's misconduct denied defendant her state and federal rights to a fair trial.

2

II. The prosecutor told the jury in opening statement that the police seized ammunition, bullets and a gun holster pursuant to a search, this seizure was not relevant to the charged offenses because it was conducted almost a month before the instant offense. The trial court denied defendant a fair trial in refusing to grant a mistrial.

III. Ineffective assistance of counsel denied defendant a fair trial.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Moore*, No. 252304 (Mich. Ct. App. March 1, 2005).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised before the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Moore*, No. 128387 (Mich. Oct. 31, 2005).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the same claims raised on direct review in state court.

### III. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review that a federal court must utilize when reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

3

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410-11.

## IV. Analysis

### A. Alleged Prosecutorial Misconduct

Petitioner alleges that the cumulative effect of the several instances of prosecutorial misconduct rendered her trial unfair. Specifically, Petitioner argues that the prosecutor engaged in misconduct by (i) referencing ammunition and a holster that were seized from co-defendant Dyer's home a month prior to the shooting incident; (ii) vouching for the credibility of prosecution witness Clay Richbow; and (iii) improperly appealing to the jury's civic duty to convict.

Respondent argues that these claims are procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar

4

issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605 (6th Cir. 1982). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), (*quoting Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)). The Court must first consider whether the prosecutor's conduct and remarks were improper, and, if so, consider the following four factors to determine " whether the impropriety was flagrant" and thus warrants habeas relief:

> (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.

*Girts v. Yanai*, 501 F.3d 743, 758-59 (6th Cir. 2007) (internal quotations omitted).

First, Petitioner argues that the prosecutor committed misconduct by referencing ammunition and a holster that were seized from co-defendant Dyer's home a month prior to the shooting incident. Petitioner also argues that the trial court's denial of a motion for mistrial on this basis was improper. Petitioner argues that this evidence was irrelevant to the charged crime and only served to prejudice the jury. The Michigan Court of Appeals held that the evidence was properly admitted. The court reasoned that the evidence was not unfairly prejudicial.

5

*Moore,* slip op. at 2-3. "Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994), *citing Fuson v. Jago*, 773 F.2d 55, 59 (6th Cir. 1985), *cert. denied* 478 U.S. 1020 (1986). Petitioner has not shown that the state court's finding that the evidence was properly admitted resulted in a constitutional violation. Therefore, Petitioner cannot establish that the prosecutor's use of properly admitted testimony constituted misconduct. In addition, because the testimony was properly admitted, she cannot show that the trial court violated her right to a fair trial by denying her motion for mistrial.

Second, Petitioner claims that the prosecutor improperly vouched for the credibility of prosecution witness Clay Richbow, when he stated, in closing argument, that "You had Miss Richbow's brother come here and testify who also testified as truthfully as he could remember it." Tr., 9/15/03, at 80.

> The Michigan Court of Appeals denied this claim, stating, in relevant part:
>
> Viewed in context, the prosecutor did not convey to the jury that he had special knowledge that the witness was testifying truthfully, and the challenged remarks were plainly focused on refuting defense counsel's suggestion made during trial that the prosecution witnesses, including the complainant's brother, were not credible. Before making the challenged remarks, the prosecutor told the jurors to "use their common sense," and noted that if the complainant's brother intended to lie, he would not have testified that a man with a gun was also at the friend's house. . . . Furthermore, a prosecutor may appeal to common sense when arguing that the circumstances of certain testimony make the testimony believable . . .
>
> To the extent that the prosecutor's remarks could be considered improper, they involved only a brief portion of his closing argument, and were not so inflammatory that defendant Moore was prejudiced . . .

*Moore*, slip op. at 4.

"'Improper vouching occurs when a prosecutor supports the credibility of a witness by

6

indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness.'" *U.S. v. Trujillo*, 376 F.3d 593, 607 (6th Cir. 2004), *quoting U.S. v. Martinez*, 253 F.3d 251, 253-54 (6th Cir. 2001). In this case, while the prosecutor's comment, considered in isolation, would be questionable, read in context, it is clear that the prosecutor was merely exploring Clay Richbow's motives for testifying. The prosecutor did not place the prestige of the prosecutor's office behind Richbow. The prosecutor simply responded to the defense's attacks on Richbow's credibility by inviting the jury to consider his motives for testifying. This does not amount to improper vouching.

Finally, Petitioner argues that, in his closing argument, the prosecutor improperly appealed to the jury's civic duty in an attempt to convince them to convict when he made the following statement:

> You know, Albert Einstein once said, the world is a dangerous place, not because of those in it [who] can do evil, but because of those who stand by and let it happen.

Tr., 9/15/03 at 113.

The Michigan Court of Appeals held that this isolated comment was not so inflammatory as to prejudice Petitioner. *Moore*, slip op. at 5.

A prosecutor has a "duty to refrain from improper methods calculated to produce a wrongful conviction." *Viereck v. United States*, 318 U.S. 236, 248 (1943). But "[u]nless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not per se impermissible." *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir.2001). In this case, the prosecutor did not ask the jury to convict on the basis of civic duty. Read in context, the prosecutor simply argued that the evidence clearly supported

7

a conviction and asked the jurors to convict based upon the evidence presented. Even assuming that this argument was improper, it did not rise to the level of prosecutorial misconduct. The prosecutor's comment did not deprive Petitioner of a fundamentally fair trial and, therefore, did not constitute prosecutorial misconduct.

**B. Alleged Ineffective Assistance of Counsel**

Finally, Petitioner claims that her trial attorney was ineffective in failing to call an eyewitness identification expert and failing to object to the prosecutor's alleged misconduct.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Strickland*, 466 U.S. at 688; additional internal quotations omitted). However, when assessing counsel's performance, the reviewing court should afford counsel great deference. *Strickland*, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize her attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be

considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

The last state court to issue a reasoned opinion regarding Petitioner's claim that her attorney erred in failing to present an identification expert, the Michigan Court of Appeals, stated, in pertinent part:

> Defendant Moore has failed to overcome the presumption that defense counsel's inaction was trial strategy. The complainant testified that she was "positive" that defendant Moore physically attacked her, and was the driver of the car. The complainant and Carter picked defendant Moore out of a lineup. Additionally, another witness at the scene positively identified defendant Moore as being involved in the altercation with the complainant. Furthermore, during the altercation, the complainant was very close to defendant Moore and, presumably, had a good opportunity to view her. In light of these facts, defense counsel could have reasonably surmised that calling an identification expert would have been futile, or that an expert may have actually been harmful to the defense. "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." [*People v. Rockey*, 237 Mich. App. 74, 76-77 (1999)].
>
> Furthermore, even if counsel's failure to retain an identification expert could be deemed unreasonable, defendant Moore cannot establish prejudice. At the conclusion of the trial, the court included in its instructions CJI2d 3.6 (witness credibility) and CJI2d 7.8 (identification), which apprised the jury of the proper considerations in determining whether to accept or reject eyewitness identifications. Additionally, these instructions accomplished the same goal as an eyewitness identification instruction would have, which is to caution the jury about the unreliability of the testimony. As a matter of trial strategy, defense counsel may not have requested an eyewitness identification instruction to avoid redundancy.
>
> Also, defense counsel adequately presented his attack on the witnesses' identifications through cross-examination, and closing argument. For example, defense counsel brought out the traumatic and transitory conditions under which the complainant and Carter saw the perpetrators, inconsistencies in their testimony, and their alcohol and drug use on the night of the offense.

9

> Accordingly, defendant Moore cannot demonstrate that there is a reasonable
> probability that, but for counsel's inaction, the result of the proceeding would
> have been different.

*Moore*, slip op. at 6.

This Court finds the state court's analysis persuasive. Petitioner provides no support for her claim that an attorney, acting within "the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, would not have proceeded to trial without hiring an expert witness on identification. Petitioner's argument is even weaker considering that defense counsel ably cross-examined the eyewitnesses regarding their ability to identify the shooter and driver based upon the lighting and the circumstances of the crime. Petitioner therefore has not shown that counsel's performance was "so defective as to require reversal of a conviction" or that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-688. The Court therefore concludes that defense counsel's decision not to call an expert witness in identification at trial does not entitle Petitioner to habeas relief.

Petitioner also claims that counsel was ineffective in failing to object to various instances of prosecutorial misconduct. As discussed above, Petitioner has failed to show that the prosecutor engaged in misconduct. Therefore, she cannot establish that her attorney was ineffective in failing to object.

## V. Conclusion

Petitioner has not established that she is in the State of Michigan's custody in violation of the Constitution or laws of the United States.

10

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

<div style="text-align: right;">
s/John Corbett O'Meara
United States District Judge
</div>

Date: June 20, 2008

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, June 20, 2008, by electronic and/or ordinary mail.

<div style="text-align: right;">
s/William Barkholz
Case Manager
</div>